# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GABRIELLE BARBOUR<br>444 N 4th St, #402<br>Philadelphia, PA 19123<br><br>Plaintiff<br><br>v.<br><br>WILLIAM P. BARR<br>In his official capacity as U.S. Attorney General<br>Head of the Drug Enforcement Agency<br><br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br><br>Defendant. | CIVIL ACTION NO.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR SEX DISCRIMINATION AND RETALIATION

COMES NOW, Plaintiff Gabrielle Barbour, by and through counsel, and brings the following complaint against Defendant William P. Barr, in his official capacity as Attorney General, and as head of the Drug Enforcement Agency and states as follows.

### NATURE OF ACTION

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, for sex discrimination and retaliation for engaging in protected activity when the Drug Enforcement Administration ("DEA") revoked Gabrielle Barbour's (hereinafter referred to as "Plaintiff") job offer when it found out that she was suing the FBI for harassment and discrimination on the basis of sex.

### JURISDICTION AND VENUE

2. Jurisdiction is proper in this court in that the district courts have original jurisdiction over Title VII under 28 U.S.C. § § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3) because they arise under the laws of the United States and are brought to recover damages for deprivation of civil rights.

3. Venue is proper in this judicial district under 28 U.S.C. § §1391(b)-(c) and 42 U.S.C. § 2000e5(f)(3) because the Defendant is located in this District, and some of the events were directed by personnel in this district. Personal practices challenged herein were directed or supervised by Defendant in this district.

## ADMINISTRATIVE PROCEDURE

4. Plaintiff has exhausted her administrative remedies prior to bringing this suit because she filed timely charges of discrimination with the DEA, and 180 days have passed since the filing of the complaint and no final decision has been made by the Agency.

## PARTIES

5. Plaintiff is a female and a resident of the State of Pennsylvania.

6. Defendant William P. Barr in his official capacity as the Attorney General of the United States of America, and as such is head of the Drug Enforcement Agency.

7. Defendant may be served with process at 950 Pennsylvania Avenue NW Washington, DC 20530.

## FACTUAL BACKGROUND

8. Plaintiff, a woman, earned a bachelor's degree in International Politics and Print Journalism in 2014 from Pennsylvania State University, where she had been a student-athlete. In 2016, she earned a master's degree in Middle East Studies from George

Washington University's Elliott School of International Affairs. She worked as a consultant for Grant Thornton LLP and as a Risk Governance Associate at JP Morgan.

9. In 2018, Plaintiff attended Basic Training as an Analyst Trainee for the Federal Bureau of Investigation ("FBI") in Quantico, Virginia. During Basic Training, Barbour passed all of her academic tests and job-related requirements. However, Barbour received three suitability notations for minor infractions. During her first week of training, Barbour received a suitability notation for parking in the wrong section of the parking lot because the designated lot was full. Barbour later learned that multiple other people, including one man in her class, parked in the wrong section of the parking lot but did not receive a suitability notation. Barbour also received a suitability notation from Supervisory Intelligence Analyst, Tyrone Jiles, for emotional maturity, cooperativeness, and judgment, alleging that she improperly responded to an email from a guest speaker and expressed interest in being assigned to that speaker's squad. She was subjected to severe sexual harassment known to and tolerated by management.

10. On July 31, 2018, Barbour was required to appear before a Trainee Review Board. Barbour asked that the Board speak to two instructors who were not present and who Barbour believed would support her. The Board told Barbour they would speak to them, but then never did so. Instead, they consulted with one of the instructors that Barbour accused of sexual harassment. That same day, the Assistant Director of the Training Division discharged Barbour from Basic Training, concluding, based upon these minor issues, that she was "unsuitable" for employment with the FBI.

11. On August 1st, 2018, the day after Plaintiff's FBI dismissal, she received an e-mail from the DEA inviting her to an orientation located at their downtown Manhattan location.

12. On August 13, 2018, Plaintiff attended orientation and filled out paperwork for the application process, where she disclosed the FBI firing. Plaintiff asked the presenter, Special Agent Lok Koi, how long would the application process take for someone with an active TS/SCI/poly to return to the academy, she said if an applicant passes everything the first time (which Barbour completed), they would be back at the academy, "May 2019, if not earlier."

13. On October 12, 2018, Plaintiff received an email inviting her to officially apply for the DEA Special Agent position and partake in the DEA SAMAC (Special Agent Mobile Application Center) in order to expedite the process.

14. On November 16-18, 2018, Plaintiff took the three exams required for the application and passed everything the first time. She received the highest score on the fitness test, out of both men and women, and was informed this would grant priority processing.

15. On November 26, 2018, Plaintiff started the EEO process with the FBI. The DEA was not aware of this up to this point in time.

16. In Mid-December 2018, the application process was moving quickly and smoothly; Plaintiff took and passed the drug test, psychological and physical screening.

17. On March 15, 2019, Plaintiff took a follow-up fitness test, which, according to their policies is to be taken within 60 days of returning to the academy, which would keep her on track to start in May 2019, as initially stated. She once again scores the highest out of both men and women on the physical fitness tests.

18. On April 15, 2019, Plaintiff received the e-Quip form and filled out the SF-86. In this form, she disclosed that she is now part of a civil sexual harassment and gender discrimination lawsuit against the FBI.

19. In Late April and again in Early May 2019, Plaintiff took the polygraph examination with Special Agent James Li and eventually received favorable results.

20. In Mid-June 2019, Plaintiff had her background interview for the DEA where the investigator obsessively questioned her about the lawsuit, including asking personal details about the sexual harassment.

21. On August 30, 2019, Plaintiff is told by the DEA that her background check is complete and that she is on to the hiring panel.

22. On October 1, 2019, Plaintiff was told that her entire background check is to be redone. As part of this process Plaintiff beings to receive varying information and lies about the status of her application and why it is being redone.

23. On October 2, 2019, Plaintiff met with the new background investigator who tells her "the reason why we are here again" is because she did not list someone in her life as a foreign contact, however this person is, in fact, a U.S. citizen.

24. On October 30, 2019, another background investigator calls Plaintiff and very deliberately tells her the investigator needs to meet with her sister only to verify a very specific bit of information—a short period of "unemployment" while she was a full-time graduate student. However, when the investigator meets with her sister on Oct. 30th, she spends nearly the entire time asking questions about the lawsuit, once again to include personal sexual details.

25. During September through December 2019, Plaintiff received at least a dozen bits of conflicting information regarding the status of her application, sometimes told that the background is complete, other times told her it is not complete, sometimes she is told she is at the hiring panel, and other times told they are not allowed to tell her the status of the application, etc. Also, during this period, SA Applicant Specialist, Karen Long, and HR Specialist, Brice Lassiter, both ceased to respond to any of Plaintiff's emails despite being previously very responsive and helpful.

26. On December 23, 2019, after calling the SA Applicant phone line, Plaintiff is told that her application has been closed and she is no longer up for consideration. Plaintiff asked when they came to this conclusion and was told December 10th. She then asked why they did not make any attempts to alert her of this and received no answer. Plaintiff had to repeatedly call and email in order to get them to email the necessary paperwork over in order to start this EEO process.

27. On January 6, 2020, Plaintiff received an email from William Kimbell detailing why the offer was rescinded. The letter stated that it was not a security denial, rather a "non-selection". The number one reason listed was her removal from the FBI.

28. The other reasons listed as justification for her non-selection were not true.

    a. For the second justification for non-selection, the DEA claimed that Plaintiff was fired from her previous employer, Grant Thornton. This is completely false. She voluntarily left after she moved from Washington, D.C. to New York upon getting married and buying a house in New York. She spoke with both HR and her previous supervisor at the company who both said they did not tell the investigator she was fired. There are also emails and paperwork proving this.

6

    b. For the third justification for her non-selection, the DEA claimed Plaintiff was fired for being a bad employee from a 6-week part-time summer job selling pots and pans she had when she was 19 years old. Plaintiff spoke to her old boss who likewise said she did not say this to the investigator. Additionally, that work was 7 years ago, and, therefore, falls out of the scope of consideration.

    c. The final justification for her non-selection was the most disconcerting lie, as there is documented paperwork within the DEA proving the contrary. Plaintiff disclosed, more than once, both on paper and in interviews, that the only drug use she ever had was one time when she was 15 years old and took an Adderall pill. The DEA denial paperwork said Plaintiff failed to disclose this and therefore lied. However, she twice disclosed it to SA James Li, who submitted the paperwork with that information onto the hiring panel. Plaintiff called to confirm this with him. Additionally, this was before her 18th birthday as well as greater than 10 years ago, and, therefore, twice falls out of the scope of consideration.

29. The second, third, and forth justifications for non-selection all "happened" before Plaintiff's first TS/SCI security clearance was granted. The only thing that occurred after determination of her security clearance was the FBI firing her and her filing a sexual harassment and gender discrimination lawsuit as a result.

30. The DEA states that one of the major reasons for unselecting Plaintiff was that she had undisclosed drug use. However, the selecting official admitted that she had disclosed this in writing to the polygraph examiner and that he knew this at the time he made the decision. Therefore, his statements establish that this could not be a legitimate nondiscriminatory reason, establishing pretext and inference of discrimination.

31. The other two reasons are also demonstrably false and further create an inference of discriminatory intent:

    a. The job at "KitchenKaboodle" where she "failed to follow direction" was a job Plaintiff held for a few weeks as a teenager selling pots and pans. After a customer asked her a question about said pots and pans and she did not know the answer, the store owner said she wanted someone who knew more about pots and pans and let her go. Is a teenager not having an intuitive knowledge of pots and pans a disqualifier for the DEA Special Agent position? This was over 7 years ago, and, therefore, out of the scope of consideration. Moreover, the skill of selling pots and pans is not tied to any essential job function of a Special Agent with the DEA.

    b. Plaintiff spoke to her superior at Grant Thornton, the only person whose name/number was given, and he told Plaintiff he said absolutely no derogatory things about her. So, the validity of this claim is also false.

32. Consideration of the Plaintiff's civil action for harassment and discrimination against the FBI is, therefore, the only remaining reason for the non-selection; it was mentioned first in the letter and Kimball relied heavily on it. However, he knew about the litigation because it was widely publicized, and the background investigator briefed the hiring panel on it. Furthermore, they knew that the case was about her termination at the FBI because of sexual harassment and sex discrimination. The DEA, therefore, had an obligation to consider whether the termination from the FBI was due to discrimination, or at least consider it "with a grain of salt." They did not do so, instead of relying wholly on the discriminatory judgment of the FBI.

33. Given that three of the four grounds for consideration are demonstrably false, and the remaining reason, the FBI case, was controversial at the very least, the only possible remaining conclusion is that they retaliated against Plaintiff because she was suing another Justice Department Agency and they did not want a troublesome female agent in their workforce. After all, there might be similar discrimination going on at the DEA Academy, which is also located at Quantico.

34. While the grounds for Barbour's non-selection were minor and irrelevant to the position, the other four male candidates were disapproved for far more obvious reasons. According to the December 10, 2019, Hiring Panel outlining the reasons for the disapproved candidates, one male candidate indicated that during 2017 and 2018, he paid five women for sex. Another disapproved male candidate had documentation of being discharged from the Army National Guard in 2014 for "Character of Service" resulting from continuous and willful absence. Another disapproved male applicant had numerous delinquent financial accounts for tax evasion and unsatisfied child support payments. And the final disapproved male applicant's polygraph test resulted in a Significant Response (SR) regarding illegal drugs in addition to his written statement of hiring prostitutes approximately forty-five times during his service in the United States Navy.

FIRST CLAIM FOR RELIEF:
<u>VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
SEX DISCRIMINATION</u>

35. Plaintiff incorporates by reference the allegations of paragraphs 1-34 above.

36. The DEA intentionally discriminated against Plaintiff because of her sex in withdrawing her offer of employment.

37. This act violated Title VII of the Civil Rights Act of 1964, as amended.

38. Plaintiff has suffered compensatory and special damages as a result of Defendant's conduct.

## SECOND CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

39. Plaintiff incorporates by reference the allegations of paragraphs 1-38 above.

40. The DEA retaliated against Plaintiff for her participation in a class action against the FBI, a sister DOJ agency, because it was another part of the Department of Justice. This was done in fear that she would expose similar problems at the DEA Academy at Quantico, where the FBI also trains.

41. Plaintiff has suffered compensatory and special damages as a result of this illegal retaliation.

## PRAYER FOR RELIEF

42. Plaintiff seeks the following relief:

   a. A Declaratory Judgment that the DEA has violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff because of her sex and in retaliation for participating in a lawsuit against the FBI;

   b. Compensatory damages according to proof;

   c. Damages for emotional distress, pain, and suffering in the amount of $300,000;

   d. Attorney's fees and costs of this action;

   e. Such further relief as the Court may deem proper;

   f. And that this matter be TRIED BY JURY.

WHEREFORE, Plaintiff demands judgment against Defendant as set forth above.

This the 18th day of November 2020.

                Respectfully submitted,

                /s/ David J. Shaffer, Esq.
                David J. Shaffer
                D.C. Bar Number 413484

                /s/ Kelley Brooks Simoneaux, Esq.
                Kelley Brooks Simoneaux
                D.C. Bar Number 187844
                Admission pending in D.C. District Court

                David Shaffer Law, PLLC
                5012 Aurora Drive
                Kensington, Maryland 20895
                Phone: 202-210-7424
                David.Shaffer@davidshafferlaw.com
                Kelley.Simoneaux@davidshafferlaw.com

                *Attorneys for Complainant*

## JURY DEMANDED

Plaintiff demands a jury on all issues so triable.

This the 18th day of November 2020.

        Respectfully submitted,

        /s/ David J. Shaffer, Esq.
        David J. Shaffer
        D.C. Bar Number 413484

        /s/ Kelley Brooks Simoneaux, Esq.
        Kelley Brooks Simoneaux
        D.C. Bar Number 187844
        Admission pending in D.C. District
        Court

        David Shaffer Law, PLLC
        5012 Aurora Drive
        Kensington, Maryland 20895
        Phone: 202-210-7424
        David.Shaffer@davidshafferlaw.com
        Kelley.Simoneaux@davidshafferlaw.com

        *Attorneys for Complainant*